[No. 43115.    En Banc.    December 26, 1974.]

TILFORD G. BAKER, *Petitioner*, v. CHARLES MORRIS, *as Secretary of the Department of Social and Health Services, Respondent.*

*Robert T. Farrell*, for petitioner.

*Slade Gorton*, Attorney General, *Richard A. Mattsen*, Senior Assistant, and *James A. Humphrey*, Assistant, for respondent.

HUNTER, J.—This case comes before us for review upon

the application of Tilford G. Baker (petitioner) for a writ
of habeas corpus. The petitioner argues that while incarcer-
ated his constitutional rights have been violated by the
manner in which the Board of Prison Terms and Paroles
has fixed his duration of confinement under RCW 9.95.

The relevant facts are as follows. The petitioner is pres-
ently incarcerated in the Washington State Penitentiary at
Walla Walla pursuant to a judgment and sentence entered
on March 10, 1966, in the Superior Court for Pierce County,
sentencing the petitioner to a term of up to life imprison-
ment for the crime of kidnapping in the first degree. By
being sentenced to life imprisonment, the petitioner was
accordingly subject to a mandatory minimum term of 20
years, less earned good time, pursuant to RCW 9.95.115.
Since the petitioner's confinement in the correctional insti-
tution, the duration of his confinement has been under the
control of the Board of Prison Terms and Paroles (herein-
after referred to as the "Board") pursuant to RCW 9.95.

In April 1966, a 2-member panel of the Board first met
with the petitioner to set his "duration of confinement" (or
"minimum term"). The Board on that date set the petition-
er's minimum term at 30 years. At its next annual meeting
with the petitioner in April 1967, the 2-member panel of
the Board, evidently acting under an erroneous impression
that the sentence of life imprisonment for the crime of
first-degree kidnapping failed to carry a mandatory mini-
mum term, "deleted" the mandatory minimum term and
"cut 6 months actual" from the minimum term. The peti-
tioner was thereafter informed of the Board's action.

Two years later, in April 1969, the Board again met with
the petitioner, when the Board discovered that the sentence
of life imprisonment for the crime of kidnapping in the first
degree did carry a mandatory minimum term of 20 years,
less earned good time, pursuant to RCW 9.95.115. An order
was issued canceling all prior Board actions, and the man-
datory minimum term was reinstated with a minimum
term of 29 years. The petitioner was not informed prior to

the meeting in 1969 that the Board was considering restoring the mandatory minimum, and no hearing was held before the Board on this question.

Following several other annual meetings with the Board, at which his duration of confinement was further reduced, the petitioner met with the Board at the regular progress meetings in October 1972, and October 1973. At both of these meetings, the petitioner attempted to have the Board waive his mandatory minimum, which he contends the Board had authority to do pursuant to the requirements of RCW 9.95.040, which provides that the Board may parole an inmate prior to the expiration of his mandatory minimum so long as "such inmate has demonstrated a meritorious effort in rehabilitation and at least four board members concur in such action." The record indicates that after both of these meetings, the question of the waiver of the petitioner's mandatory minimum term was referred to the full Board, which voted four to three in favor of waiver. However, under rule 7.040 promulgated by the Board in July 1972, the waiver of an inmate's mandatory minimum term requires a vote of at least six board members, and consequently, the vote of four board members was considered inadequate by the Board to constitute a waiver. The consequence of the petitioner's failure to obtain a waiver of his mandatory minimum is that he will not be eligible for parole until his mandatory minimum expires, and the petitioner is precluded from participating in the furlough program and the work training release program.

The petitioner thereafter filed a petition for a writ of habeas corpus on January 28, 1974, alleging, among other things, that his continued confinement under a mandatory minimum term was the product of illegal action by the Board. We later accepted jurisdiction of the cause to consider the issues involved.

The petitioner's central argument in this case is that the Board acted beyond its rulemaking authority in adopting

rule 7.040, requiring at least six board members to waive an inmate's mandatory minimum term. We agree.

■ The statutory authority for the Board to relieve an inmate from a mandatory minimum term is contained in RCW 9.95.040, which provides in part:

Except when an inmate of the reformatory, penitentiary or such other penal institution as may hereafter be established, has been convicted of murder in the first or second degree, *the board may parole an inmate prior to the expiration of a mandatory minimum term, provided such inmate has demonstrated a meritorious effort in rehabilitation and at least four board members concur in such action: Provided,* That any inmate who has a mandatory minimum term and is paroled prior to the expiration of such term according to the provisions of this chapter shall not receive a conditional release from supervision while on parole until after the mandatory minimum term has expired.

(Italics ours.) Since the above statute does not specifically refer to a *waiver* of the mandatory minimum term, we believe some clarification is necessary for an understanding of the reference being made to the statute as the *waiver* of the mandatory minimum term *statute.* This requires noticing the limitations of RCW 9.95.115, which states:

The board of prison terms and paroles is hereby granted authority to parole any person sentenced to the penitentiary or the reformatory, *under a mandatory life sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time* . . .

(Italics ours.) The petitioner was convicted of first-degree kidnapping which carries a mandatory life sentence. RCW 9.52.010. Thus, unless some form of action is taken, RCW 9.95.115 prevents any consideration of parole for at least 20 years, less good time earned. The authority for such action is provided in RCW 9.95.040, as above set out. Therefore, by reading these two statutory provisions, RCW 9.95.115 and RCW 9.95.040, in pari materia it is implicit that RCW 9.95.040, if followed, has the effect of waiving the manda-

tory minimum term of an inmate upon an affirmative vote of the four members of the Board.

RCW 9.95.040 was enacted by the legislature at a time when the membership of the Board consisted of four members and a chairman. Laws of 1959, ch. 32, § 1, p. 356. The legislature, however, in 1969, enacted RCW 9.95.003, which increased the Board's membership to that of a chairman and six other members. Significantly, the legislature did not change the provision in RCW 9.95.040, authorizing the waiver of an inmate's mandatory minimum upon the concurrence of at least four Board members.

In response to the action of the legislature in 1969, increasing the membership of the Board from five to seven, the Board made the determination that the increase in its membership justified increasing the number of votes required to waive an inmate's mandatory minimum term pursuant to RCW 9.95.040. Accordingly, the Board, in July 1972, adopted Rule 7.040[1] which requires a vote of at least six board members to waive an inmate's mandatory minimum term. The statutory authority upon which the Board acted in promulgating the rule provides as follows:

> The board of prison terms and paroles shall make all necessary rules and regulations to carry out the provi-

---

[1]Rule 7.040 states as follows:

"Except when a resident of an adult correctional institution has been convicted of Murder in the First Degree or Murder in the Second Degree, the Board may parole a resident prior to the expiration of a mandatory minimum term, provided, such resident has demonstrated a meritorious effort in rehabilitation *and at least six members concur* in such action; provided, that any resident who has a mandatory minimum term and is paroled prior to expiration of such term according to this rule and pursuant to RCW 9.95.040, shall not receive a Conditional Discharge From Supervision while on parole until after the mandatory minimum has expired. The question of *waiver* of mandatory minimum term may be referred to the full Board by any member of the panel which has been assigned to hear the matter, following an in-person meeting. The Board will review and consider any recommendation submitted by the superintendent for waiver of a mandatory minimum term." (Italics ours.)

sions of this chapter *not inconsistent therewith,* and may provide the forms of all documents necessary therefor.

(Italics ours.) RCW 9.95.150.

In view of the statutory provision governing the rulemaking power of the Board and the clear and unambiguous language of RCW 9.95.040, we believe the Board has exceeded its rulemaking authority in promulgating rule 7.040 to the extent that it amends and modifies the precise requirement set forth in the statute. The language in RCW 9.95.040, requiring the concurrence of at least four board members to waive an inmate's mandatory minimum, could not be more specific, and we feel there is no room for administrative interpretation of the meaning of this statute as enacted by the legislature. In *State v. Roth,* 78 Wn.2d 711, 479 P.2d 55 (1971), we stated on page 715:

> Earlier enactments dealing with the same subject matter are presumed to have been considered by the legislature when it amends legislation. Any new provisions of a statute are then deemed adopted in light of and with reference to the earlier act.

The legislature, when it amended the act, then must be presumed to have done so with full knowledge of its previous enactment requiring the affirmative vote of only four members of the Board to authorize a waiving of a mandatory minimum term. By the promulgation of an administrative rule, the Board has attempted to amend and modify the specific intent of the legislature. This it cannot do.

In *State ex rel. West v. Seattle,* 50 Wn.2d 94, 309 P.2d 751 (1957), we addressed the issue of the proper scope of rulemaking authority by an administrative agency. In holding a rule, promulgated by the Seattle Civil Service Commission, to be invalid on the basis that it was in conflict with a provision in the Seattle Charter, we stated on page 97:

> But the power of an administrative agency to promulgate rules is not unlimited. Under the guise of the rulemaking power, it may not legislate and the rules must be within the framework of the policy laid down in the statute or ordinance.

We also expressed the above proposition in *Pierce County v. State*, 66 Wn.2d 728, 404 P.2d 1002 (1965), wherein the validity of a Tax Commission rule was in question. We stated on page 731:

We recognize that great weight is to be given to rules promulgated by the Tax Commission in determining the meaning of taxing laws. But such regulations cannot amend or modify the statute in question. *Fisher Flouring Mills Co. v. State*, 35 Wn.2d 482, 213 P.2d 938; *Stokely-Van Camp, Inc. v. State*, 50 Wn.2d 492, 312 P.2d 816. The regulation with which we are here concerned is tacitly admitted by respondent to be one of expediency and convenience. We cannot accept it in the face of the statute, the meaning of which is clear and certain.

Under the record in this case, the Board decided by a majority vote of four to three to waive the petitioner's mandatory minimum term following the meetings with the petitioner in October 1972, and October 1973. We hold that the action of the Board on these two occasions satisfied the requirement of RCW 9.95.040, and constituted a valid waiver of the petitioner's mandatory minimum term, and that the Board's Rule 7.040 is invalid.

The State, however, contends that the petition for the writ of habeas corpus should be dismissed in this case on the basis that it raises issues not cognizable in habeas corpus. We find this contention to be without merit.

It is a well-recognized rule that a writ of habeas corpus is not a static, narrow, formalistic remedy. Its scope has continually developed in order that it constantly protects individuals against the erosion of the right to be free from *wrongful restraints* on their liberty. 39 Am. Jur. 2d, *Habeas Corpus* § 11 (1968); *Jones v. Cunningham*, 371 U.S. 236, 9 L. Ed. 2d 285, 83 S. Ct. 373, 92 A.L.R.2d 675 (1963); *Woods v. Burton*, 8 Wn. App. 13, 503 P.2d 1079 (1972). The use of habeas corpus is proper in this particular case because the imposition of a mandatory minimum term directly affects a condition to the petitioner's right to release at an earlier date. The removal of the man-

datory minimum as a restraint on the petitioner's liberty now allows the Board to consider paroling the petitioner pursuant to its authority under RCW 9.95.

The petitioner also contends that he is entitled to relief on other grounds set forth in his petition. We need not consider these arguments, however, in view of our disposition of this case.

We therefore hold that the petitioner's petition for habeas corpus is granted insofar as the restraint of the petitioner's liberty is affected by the affirmative vote of the four members of the full Board in waiving the petitioner's minimum term.

Other relief sought by the petitioner under his writ for habeas corpus is without merit and is therefore denied.

FINLEY, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

STAFFORD, J. (dissenting)—The majority opinion has recited the necessary facts correctly. Nothing will be gained by repeating them. I disagree, however, with the conclusion that the Board acted beyond its authority in adopting rule 7.040 which requires at least six board members to waive an inmate's mandatory minimum term.[2]

The statute giving rise to the disagreement is RCW 9.95.040, which provides in part:

> Except when an inmate of the reformatory, penitentiary or such other penal institution . . . has been convicted of murder in the first or second degree, the board *may parole* an inmate prior to the expiration of a mandatory minimum term, provided such inmate has demonstrated a meritorious effort in rehabilitation and *at least four* board members concur in such action . . .

(Italics mine.)

---

[2]Rule 7.040 states as follows:

"Except when a resident of an adult correctional institution has been convicted of Murder in the First Degree or Murder in the Second Degree, the Board may parole a resident prior to the expiration of a mandatory minimum term, provided, such resident has demonstrated a meritorious effort in rehabilitation *and at least six members* concur in such action . . ." (Italics mine.)

The majority is correct in saying RCW 9.95.040 was en-acted at a time when the Board consisted of five members and that subsequently the legislature increased the Board's membership to seven without changing RCW 9.95.040. I also agree that, in response to the legislatively increased membership, the Board adopted rule 7.040 increasing the number of votes required to waive an inmate's mandatory minimum term pursuant to RCW 9.95.040. I do not agree, however, that the rule which now requires a concurrence of six members (rather than four) to waive an inmate's mandatory minimum term, exceeds the Board's rulemak-ing authority.

The majority's view stems primarily from RCW 9.95.150 which provides in part:

> The board of prison terms and paroles shall make all necessary rules and regulations to carry out the provi-sions of this chapter *not inconsistent therewith* . . .

(Italics mine.) The majority hold that the increase in re-quired membership concurrence from four to six, for waiver of a mandatory minimum, is clearly inconsistent with RCW 9.95.040 and thus invalid under RCW 9.95.150.

Such holding ignores the plain language of RCW 9.95.040 and substitutes language that is not there. RCW 9.95.040 does not provide that a waiver must be granted if four board members vote favorably thereon; that there must be a four-fifths majority to waive a mandatory minimum; or, that the required number voting favorably upon a waiver of a mandatory minimum cannot be increased. RCW 9.95.040 provides merely that the Board "may parole an inmate prior to the expiration of a mandatory minimum term, provided . . . *at least* four board members con-cur in such action" (Italics mine.). Unfortunately the ma-jority has ignored the phrase "at least."

"At least" is not a restrictive phrase of maximum re-quirement, as the majority appear to assume. Rather, it has regularly been held to be *expressive of a minimum,* to be

equated with "no less than" or "the smallest number." "At least" implies that while the number shall not be less than that specified, it may be *more*.[3] That being the case, RCW 9.95.040 neither mandates the waiver of a mandatory minimum term upon the concurrence of four board members nor does it prevent the Board, after an increase in membership, from requiring a favorable vote of a larger number of board members. The provision for "*at least* four board members" provides a minimum below which the board shall not go. However, the maximum is not so restricted. Clearly the Board acted within its statutory authority. Its rule is not inconsistent with RCW 9.95.040.

The petition for habeas corpus should be denied.

HALE, C.J., HAMILTON, J., and COLE, J. Pro Tem., concur with STAFFORD, J.

---

[3]*See Commercial Union Ins. Co. v. Mabry*, 442 S.W.2d 413, 414 (Tex. Civ. App. 1969); *Schmeckpeper v. Panhandle Co-op. Ass'n*, 180 Neb. 352, 357, 143 N.W.2d 113, 117 (1966); *Santow v. Ullman*, 39 Del. Ch. 427, 433, 166 A.2d 135, 139 (1960); *Miller v. State*, 130 Miss. 564, 583, 94 So. 706, 709 (1923).